IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JASON M. REEP**                                                                                                 **PLAINTIFF**

**v.**                                        **Case No. 4:23-cv-00746-LPR**

**MALCO THEATRES, INC.; MICHAEL HUGGINS,**
*Individually and in his capacity and association with Malco Theatres, Inc.*; **ROBERT HARRINGTON,**
*Individually and in his capacity and association with Malco Theatres, Inc.*; **DAVID CRUTCHFIELD,**
*Individually, and in his capacity and association with Monticello Police Department*; **WALTER (HANK) HOLLINGER,** *Individually and in his capacity and association with Monticello Police Department*;
**JOSEPH BRETT NORTON,** *Individually and in his capacity and association with Monticello Police Department*;
**MONTICELLO POLICE DEPARTMENT;**
**AND JOHN DOES (1–10)**                                                                               **DEFENDANTS**

## ORDER

This civil case arises out of the circumstances surrounding certain criminal proceedings brought against Mr. Reep for burglary, theft of property, and criminal mischief under Arkansas state law.[1] More specifically, Mr. Reep was accused of stealing from the Malco cinema in Monticello, Arkansas after being fired from his general manager position at that cinema.[2]

In the instant case, Mr. Reep brings a variety of claims against his former employer, persons associated with his former employer, the Monticello Police Department, and individual law enforcement officers associated with the Monticello Police Department. Almost all of Mr. Reep's

---

[1] Compl. (Doc. 2) ¶ 33. All claims against Defendant Malco Theatres, Inc. have previously been dismissed. Order (Doc. 70). All claims against Defendant Michael Huggins have previously been dismissed. Order (Doc. 71). All claims against Defendant Robert Harrington have previously been dismissed with prejudice. Order (Doc. 39). All claims against Defendant Monticello Police Department have previously been dismissed with prejudice. Order (Doc. 68).

[2] Compl. (Doc. 2) ¶ 20, 26, 28, 33.

claims have been dealt with in previous Orders of this Court.[3]  The only live claims are those brought against Mr. Crutchfield, Mr. Hollinger, and Mr. Norton.  They are law enforcement officers with the Monticello Police Department.  (For ease of understanding, the Court will call them the Separate City Defendants.)  And they have brought a Motion for Judgment on the Pleadings to seek dismissal (with prejudice) of the live claims.[4]

The Separate City Defendants are being sued in both their personal and official capacities.[5]  The official capacity claims are treated as claims against the City of Monticello itself.[6]  But the distinction between the official and personal capacity claims is irrelevant for our purposes because—as explained below—neither the official capacity nor the personal capacity claims can survive judgment on the pleadings.  This is due to multiple statute of limitations issues and Mr. Reep's repeated failures to properly plead his claims.

I.      LEGAL STANDARD

The legal standard used to evaluate a Rule 12(c) motion for judgment on the pleadings is the same as the legal standard used to evaluate a Rule 12(b)(6) motion to dismiss.[7]  "To survive a motion for judgment on the pleadings, a 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"[8]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[3] *See* Order (Doc. 39); Order (Doc. 68); Order (Doc. 70); Order (Doc. 71); Order (Doc. 74).

[4] City Defs.' Mot. for J. on the Pleadings (Doc. 58) at 1–2.

[5] The official-capacity section 1983 claims against Separate City Defendants have been dismissed in a previous Order. Order (Doc. 74).

[6] Order (Doc. 74).

[7] *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

[8] *Mickelson v. County of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (quoting *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 897, 900 (8th Cir. 2014)).

defendant is liable for the misconduct alleged."[9]  Those facts must "affirmatively and plausibly suggest that the pleader has the right he claims," whereas "facts that are merely consistent with such a right" are insufficient.[10]

When making this plausibility determination, factual allegations in the Complaint are to be taken as true.[11]  But this only goes so far.  A court need not accept as true "conclusory statements" or "naked assertions devoid of further factual enhancement."[12]  Indeed, the Court "is free to," and absent unusual circumstances should, "ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."[13]  With the foregoing legal standard in mind, the Court turns to Mr. Reep's remaining live claims.

## II.   SECTION 1983

In Count II of his Complaint, Mr. Reep alleges several constitutional violations that he believes support a section 1983 claim.[14]  The alleged constitutional violations will be addressed in turn.

### A.   The Fourteenth Amendment Claim

Mr. Reep first alleges that his "Right to Due Process Under Law under the Fourteenth Amendment" has been violated.[15]  Mr. Reep's Fourteenth Amendment claim is not a model of clarity.  But various parts of paragraph 51—including the invocation of the Due Process Clause of

---

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[10] *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007).

[11] *Ashley County. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (citing *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)).

[12] *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012) (cleaned up) (quoting *Iqbal*, 556 U.S. at 678).

[13] *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (citing *Westcott*, 901 F.2d at 1488); *see also Retro Television Network*, 696 F.3d at 768.

[14] 42 U.S.C. § 1983; Compl. (Doc. 2) ¶¶ 47–58.

[15] Compl. (Doc 2.) ¶ 51(a) (cleaned up).

the Fourteenth Amendment in paragraph 51(a) and the allegation of deprivation of private property in paragraph 51(d)—can be stitched together to suggest an attempt to state a cognizable Fourteenth Amendment procedural due process claim.[16]

Mr. Reep's claim is fatally under-plead for several reasons. First, although Mr. Reep alleges that "law enforcement" seized his property, he doesn't allege that the Separate City Defendants were involved in any way with that seizure.[17] Second, while Mr. Reep alleges that "Defendants have failed and refused to return" his property, he does not allege which (if any) of the Separate City Defendants are responsible for the failure to return his property.[18] Third, Mr. Reep does not allege with any specificity what was taken.[19] Fourth, Mr. Reep does not indicate why his property was taken. Fifth, although Mr. Reep alleges that he has made "multiple requests" for the return of his property, he has not alleged that any of those requests were made to the Separate City Defendants specifically, he has not alleged when those requests were made, and he has provided no information about the nature of the administrative process he went through in attempting to get his property returned.[20]

The fact allegations missing from Mr. Reep's Complaint are far from trivial. Mr. Reep has not provided the Court with nearly enough alleged facts to plausibly suggest that any of the

---

[16] It is also possible that Mr. Reep was attempting to invoke the Takings Clause of the Fifth Amendment. *See* Compl. (Doc. 2) ¶¶ 40, 51. But the Complaint is bereft of language like "takings" or "just compensation" that would support such a reading of Mr. Reep's claim. Instead, the Complaint contains allegations that "Plaintiff has been deprived of his private property," *id.* ¶ 51(d), that "Defendants failed to follow rules, policies, and procedures utilized by law enforcement officers," and that, in doing so, Defendants violated "Plaintiff's guaranteed rights under the Fourth, Fourteenth, and Fifth Amendments." *Id.* ¶ 57. In the Court's view, this language is much more consistent with a procedural due process claim than a Takings Clause claim.

[17] *Id.* ¶ 40.

[18] *Id.*

[19] *Id.* Elsewhere in his complaint, Mr. Reep does allege that his shoes were confiscated. *Id.* ¶¶ 37(i)–37(j). But Mr. Reep never alleges that those shoes have not been returned to him.

[20] *See id.* ¶ 40.

4

Separate City Defendants have violated his due process rights. But even if he had specifically alleged that any of the Separate City Defendants had seized or retained his private property without the required process, his Complaint would still lack information required for the Court to analyze such a claim. As the Eighth Circuit has recognized, the procedural requirements of the Due Process Clause are "not rigid."[21] Evaluating the adequacy of whatever procedure Mr. Reep was afforded in his attempts to recover his property would require the Court to engage in a complex and highly situational balancing test.[22] That test requires the Court to look at the who, what, when, where, and why—exactly the kind of facts missing from Mr. Reep's Complaint.

There's just not nearly enough meat on the bone here. Given the inadequacy with which Mr. Reep has pled his Fourteenth Amendment claim, it can't survive judgment on the pleadings.[23]

    **B.**    **The Fourth Amendment Claims (Excepting Malicious Prosecution)**

Mr. Reep alleges two Fourth Amendment violations committed by the Separate City Defendants: (1) arrest without probable cause and (2) violation of Mr. Reep's "Rights Against Unreasonable Search and Seizures."[24] Both of Mr. Reep's Fourth Amendment claims fail because they are time-barred. The statute of limitations for section 1983 claims is the state statute of limitations for personal injury torts, which in Arkansas is three years.[25] The arrest and search warrants were executed on Mr. Reep on or about May 22, 2019, over three years before the present

---

[21] *Mickelson*, 823 F.3d at 924.

[22] *See id.*

[23] It is also possible that Mr. Reep intended for paragraph 51(a), which references the Fourteenth Amendment, and paragraph 51(d), which references the Fifth Amendment, to constitute entirely separate allegations. If that were the case, his Fourteenth Amendment claim would still be fatally under-pled. And any independent Fifth Amendment claim would fail because the Fifth Amendment (if divorced from incorporation-by-way-of the Fourteenth Amendment) only applies to federal actors. *See Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019) (citing *Barnes v. City of Omaha*, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009)).

[24] Compl. (Doc. 2) ¶¶ 51(b)–51(c) (cleaned up).

[25] *See DeVries v. Driesen*, 766 F.3d 922, 923 (8th Cir. 2014); *Shelter Mut. Ins. Co. v. Nash*, 357 Ark. 581, 586, 184 S.W.3d 425, 427 (2004).

action was filed.[26]  Therefore, both claims are barred by the statute of limitations, and the Separate City Defendants are entitled to judgment on the pleadings with regard to the Fourth Amendment claims. [27]

### III.  NEGLIGENCE

In Count VI of his Complaint, Mr. Reep pleads a claim of negligence against the Separate City Defendants.  This claim is—to be understated about it—a bit of a mess.[28]  Bottom line: Mr. Reep claims that the Separate City Defendants acted negligently by "neglecting to follow both State and Federal laws (including, but not limited to, reasonable suspicion, probable cause, investigations, proper oversight of employees, [and] use of evidence) . . . ."[29]  But all of those allegedly negligent actions happened sometime between May 22, 2019, and June 28, 2019.[30]  That puts those actions well outside of the three-year statute of limitations for negligence actions in Arkansas.[31]  Accordingly, Mr. Reep has failed to sufficiently plead a claim for negligence.

### IV.  MALICIOUS PROSECUTION

Count I of Mr. Reep's Complaint alleges that the Separate City Defendants engaged in the malicious prosecution of Mr. Reep.[32]  It is not clear from the face of the Complaint, or from any of Mr. Reep's briefing, whether this malicious prosecution claim is based in federal law or state

---

[26] Compl. (Doc 2) ¶ 29.  Mr. Reep's Complaint was filed in Arkansas state court on April 10, 2023.  *Id.* at 1.  The statute of limitations for a section 1983 claim begins to run when the plaintiff has a "complete and present cause of action . . . ." *McDonough v. Smith*, 588 U.S. 109, 115 (2019) (internal citations omitted).  Were Mr. Reep to have a valid cause of action for a Fourth Amendment violation, that cause of action would have been complete and present at the time the arrest warrant or search warrant was executed.

[27] The statute of limitations on Mr. Reep's section 1983 claims is not affected by the *Heck* doctrine.  *See Wallace v. Kato*, 549 U.S. 384, 393–94 (2007).

[28] Compl. (Doc 2) ¶¶ 76–82.

[29] *Id.* ¶ 81.

[30] *Id.* ¶¶ 29–34.

[31] *See O'Mara v. Dykema*, 328 Ark. 310, 317, 942 S.W.2d 854, 858 (1997) ("It has long been the law in [Arkansas] that a three-year statute of limitations applies to all tort actions not otherwise limited by law.").

[32] Compl. (Doc. 2) ¶¶ 41–46.

law. Either way, Mr. Reep's malicious prosecution claim fails because he has not pled facts that, if taken as true, establish a lack of probable cause. And absence of probable cause is an essential element of both federal-law and state-law malicious prosecution claims.[33]

"In the context of a malicious prosecution action, the existence of probable cause is to be determined by the facts and circumstances surrounding the commencement and continuation of the legal proceedings . . . ."[34] The existence of probable cause "must be based upon the existence of facts or credible information that would induce a person of ordinary caution to believe the accused person to be guilty of the crime for which he is charged."[35] Correspondingly, the absence of probable cause must be based upon the absence of such facts or information. Although heavy on legal conclusions, Mr. Reep's Complaint is light on specific facts that would, if taken as true, establish a lack of probable cause to arrest Mr. Reep and initiate criminal proceedings against him.

Consider paragraph 32 of the Complaint, which alleges that certain discovery uncovered by Mr. Reep's lawyers in the criminal proceeding showed that "the Defendants failed to properly investigate the cinema robbery, omitted material information, failed to provide discoverable evidence to the State (the Prosecuting Attorney's Office) and to [criminal] defense counsel[] . . . ."[36] Those statements—which are repeated in a slightly reformulated way in paragraph 35—are all conclusory. Now, it is true that Mr. Reep tries to flesh out his conclusory

---

[33] See Chiaverini v. City of Napoleon, 602 U.S. 556, 558 (2024) (to succeed on "what is often called a Fourth Amendment malicious-prosecution claim under 42 U.S.C. § 1983 . . . a plaintiff must show that a government official charged him without probable cause, leading to an unreasonable seizure of his person."); Sundeen v. Kroger, 355 Ark. 138, 142, 133 S.W.3d 393, 395 (2003) ("In order to establish a claim for malicious prosecution, a plaintiff must prove the following five elements: (1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages.").

[34] Sundeen, 355 Ark. at 143, 133 S.W.3d at 396.

[35] Id.

[36] Compl. (Doc. 2) ¶ 32. That paragraph also accuses Defendants of "fail[ing] to provide discoverable evidence to the State . . . and to [criminal] defense counsel[]," but it is unclear what evidence Defendants allegedly failed to produce and why the allegedly withheld evidence is relevant to Mr. Reep's malicious prosecution claim.

assertions in paragraph 36 by listing "examples" of things he says "occurred[] at the hands of the Defendants."[37] But these "examples" don't get Mr. Reep over the hump.

First, Mr. Reep alleges that "Defendants relied on the statements from others and failed to investigate said statements [or] substantiate the substance contained therein."[38] The context suggests that Mr. Reep is referring to statements made to law enforcement by two Malco Theatre employees.[39] But the Complaint does not provide any details as to the contents of the statements.[40] And without knowing the contents of the statements, it is impossible to know if law enforcement's reliance on those statements was permissible or impermissible.

Instead of providing specific fact allegations about the contents of these statements, Mr. Reep attacks the character of the statement-givers, calling the two Malco Theatre employees "unreliable and interested."[41] But the only thing that might qualify as a specific fact allegation on this front—that the statements included some discrepancies about one or both employees not locking the safe—does not suggest law enforcement could not otherwise rely on the statements.[42]

Second, Mr. Reep points to an alleged discrepancy between how a Ford appeared in a particular still-shot (black with a white top) and how the Ford appeared elsewhere in the surveillance footage.[43] But Mr. Reep's Complaint never explains why this matters. He doesn't

---

[37] *Id.* ¶ 36.

[38] Compl. (Doc. 2) ¶ 36(a).

[39] *Id.* ¶ 36(b).

[40] It is true that Mr. Reep seems to allege the employees' statements were contradictory. *Id.* ¶ 36(c). But since Mr. Reep never describes the actual contents of the statements that were allegedly contradictory, his characterization is a mere legal conclusion.

[41] *Id.* ¶ 36(b).

[42] *See id.* ¶ 36(c). Mr. Reep also alleges that these employees "were working on the shift prior to the . . . robbery," that the "'manager' clocked out early" from that shift, and that the "manager . . . failed to account for or deposit the moneys received by her prior to her early departure . . . ." *Id.* ¶ 36(d). Again, it is never explained in the Complaint why these alleged facts call the two employees' statements into question. And it is impossible to conclude these alleged facts would be enough to negate probable cause without knowing the content of the employees' statements.

[43] *Id.* ¶¶ 37(a)–37(h).

allege how the Ford is related to anything in this case, or why it would matter whether the Ford was misidentified. Does Mr. Reep have a black Ford with a white top? Was the Ford involved in the cinema robbery? We are not given this information in the Complaint. Time and time again, the Complaint fails to sufficiently tether its few factual allegations to its legal allegations.

Third, Mr. Reep notes that even though his shoes (seized from his residence) did not match those worn by a suspect in the surveillance video, Defendants said the shoes were similar to shoes seen in a still-shot of the video.[44] Specifically, Mr. Reep states that the confiscated shoes were "'black,' leather loafers/dress shoes," whereas the shoes from the surveillance video were "laced, multi-colored hiking boots."[45] This is insufficient to dispute a finding of probable cause by itself. The problem for Mr. Reep is that the Complaint clearly indicates the decision to arrest and prosecute him was informed by evidence beyond Defendants' belief that the shoes were similar.[46] Without knowing more about the role the shoes played in Defendants' decision to arrest and prosecute Mr. Reep, it is not plausible that the discrepancy between the two pairs of shoes alone could establish a lack of probable cause.

In summary, the Complaint has not pled facts which, if taken as true, would establish a lack of probable cause. Therefore, Mr. Reep has failed to state a prima facie claim of malicious prosecution.

\*   \*   \*

For the foregoing reasons, Separate City Defendants' Motion for Judgment on the Pleadings (Doc. 58) is GRANTED. Count I (the malicious prosecution claim) and part of Count

---

[44] *Id.* ¶¶ 37(i)–37(j).

[45] *Id.* ¶ 37(j).

[46] *See, e.g., id.* ¶ 38 ("[M]uch of the information made and contained in Defendants' evidence (all of which was used to acquire a Warrant for Arrest, . . . and Plaintiff's prosecution) was not accurate . . . .").

II (the section 1983 claim, insofar as it rests on the alleged Fourteenth Amendment violation) are dismissed due to failure to state a claim, whereas Count VI (the negligence claim) and part of Count II (the section 1983 claim, insofar as it rests on the alleged Fourth Amendment violations) are dismissed because they are time-barred.

Here's the rub. Count VI and the Fourth Amendment claims in Count II are dismissed with prejudice. But since Count I and the Fourteenth Amendment claim in Count II are dismissed for failure to state a claim—the sort of thing that would usually be determined by a Rule 12(b)(6) motion—it strikes the Court as appropriate to grant the sort of relief that it would grant if it were considering a Rule 12(b)(6) motion. And had this been a Rule 12(b)(6) motion, the Court would not have dismissed Count I and the Fourteenth Amendment claim in Count II with prejudice. The Court sees no reason to do so just because it has a Rule 12(c) motion before it rather than a Rule 12(b)(6) motion. Count I and the Fourteenth Amendment claim in Count II are therefore dismissed without prejudice.

IT IS SO ORDERED this 3rd day of February 2025.

                                            _____
                                            LEE P. RUDOFSKY
                                            UNITED STATES DISTRICT JUDGE